# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TIMOTHY J. SMITH<br><br>*Plaintiff*,<br><br>vs.<br><br>MORTON INTERNATIONAL, INC.,<br><br>*Defendant*. | Case No. 09-1050-EFM |

## MEMORANDUM AND ORDER

Plaintiff Timothy J. Smith brings suit under the ADA and alleges that Defendant Morton International, Inc. discriminated against him on the basis of his disability, Hepatitis C, when it terminated him in January of 2007. Before the Court is Defendant Morton International, Inc.'s Motion for Summary Judgment (Doc. 41). For the following reasons, the Court grants Defendant's motion.

## I. Factual and Procedural Background[1]

Defendant Morton International, Inc. ("Morton Salt") operates a salt processing facility in Hutchinson, Kansas. Plaintiff Timothy Smith was first employed by Morton Salt in 1998 and has worked in various union-represented hourly positions since then. Smith had disciplinary incidents in March 2000 and December 2001 for which he received warnings related to making profane,

---

[1]In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party. The Court will note the instances in which Plaintiff attempts to controvert a fact but fails to appropriately do so.

threatening, or otherwise inappropriate remarks to co-workers.

In early 2002, Smith was diagnosed with Hepatitis C. Morton Salt granted Smith a six-month leave of absence to obtain treatment, including chemotherapy. While Smith was on leave, co-worker Brian Henning expressed concerns about working with Smith, indicating a concern about the communicability of the disease.[2] Henning never made any comments to Smith directly. No other co-workers or management employees made any comments about his Hepatitis C diagnosis.

Company management addressed Henning and his concerns.[3] Supervisor Mark Estes told Henning to stop making the remarks about Smith's condition. Specifically, Estes told Henning that he need to "keep his mouth shut" or "shut up." In addition, Human Resources Manager John Cavanaugh distributed information to employees to advise them Hepatitis C was not communicable through casual contact and that no one had anything to fear in working with Smith when he returned to work.

In the latter part of 2002, Smith returned from his leave of absence. Since that time, he has not received any treatment. The doctors, however, continue to monitor his condition. Smith testified that as a result of the Hepatitis C diagnosis, he gets tired more easily and suffers from some aching in his joints.

---

[2]Plaintiff asserts that he believes Henning also made a comment in October 2006 that he did not want to work with Plaintiff because of his Hepatitis C. However, this appears to be inadmissible hearsay, as Plaintiff contends he heard about this comment through somebody else.

[3]Plaintiff attempts to controvert the facts about management addressing Henning and his concerns by citing to his deposition testimony. However, Plaintiff previously stipulated to this fact (and several other facts that he attempts to now controvert) in the Pretrial Order. *See* Doc. 40, p. 3, ¶4(a)(7). Generally, parties are bound by the pretrial order and the facts stipulated to in the pretrial order. *See Glover v. NMC Homecare, Inc.*, 13 F. App'x 896, 902-03 (10th Cir. 2001) (finding that when a factual stipulation is clear and unambiguous, it is not a manifest injustice to hold the parties to those stipulations) (citing *L.P.S. v. Lamm*, 708 F.2d 537, 539-40 (10th Cir. 1983)). *See also Hung Duc Bui v. IBP, Inc.*, 201 F.R.D. 509, 513 (D. Kan. 2001) ("Because the pretrial order 'represents a complete statement of all the contentions by the parties,' *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 817 (10th Cir. 1979), this court is justified in relying heavily on it in ruling on summary judgment motions and in trying cases.")

Shortly after returning to work in 2002, Smith bid on and was awarded a position as third shift boiler operator. Smith sought the position because it resulted in an increase in pay, allowed him to learn new skills, and gave him an opportunity to avoid working with Henning.

In the boiler position, Smith worked with co-worker Jeff Luoma. Smith believed that Luoma was extremely rude and condescending to him and reported Luoma's behavior to Simey Garcia, Smith's immediate foreman. Smith was always told to blow it off.

In August of 2005, Smith and Luoma were involved in an off-site incident. Smith does not attribute any of Luoma's conduct to Smith's Hepatitis C diagnosis. In the August 2005 incident, Smith was driving his vehicle when he passed Luoma, and Luoma "flipped him off." Smith stopped his truck, confronted Luoma, and told him that "if he kept jacking with me I was going to stomp his butt right into the ground." Luoma reported the incident to management and called the police.

As a result of this incident, management initially suspended Smith and Luoma for three weeks. The labor union representing Smith and Luoma challenged both suspensions. Ultimately, with respect to Smith, an agreement was reached in October 2006 to reduce his suspension from three weeks to three days, provide him the difference in pay for that period, and enter into a "Last Chance Agreement."[4] This agreement provided in part:

> **Expected Behavior:** Aggressive, abusive, hostile language of any kind, or any behaviors verbal or non verbal that would be considered threatening, violent, or otherwise in violation of the Company's Workplace Violence and Anti-harassment Policy is a violation of this agreement. Mr. Smith is expected to act in a respectful, constructive manner at all times and towards all employees. If there are work-related issues that Mr. Smith encounters regarding his co-workers, that he is not able to resolve in a constructive manner, then he is to alert management to the situation immediately.

---

[4] Plaintiff asserts that Luoma was immediately given his pay during the suspension, but this is unsupported by any evidence other than Plaintiff's own deposition testimony.

It also provided for confidentiality as to the agreement, that the terms would begin when all parties signed the document, and the letter was to remain in Smith's file for twelve months if there were no further infractions.

In late 2006, Smith learned of a first shift boiler operator job. He bid on the job, which would move him away from Luoma on third shift but back into the same shift as Henning. Smith was awarded the bid effective January 1, 2007.

On or about January 14, 2007, an incident occurred in the lunchroom. Smith, Henning, and co-worker Ray Reese were eating lunch together. Smith asked Reese why another co-worker, Larry Day, wanted Reese's help rather than Smith's help. Reese jokingly replied that Day did not want to listen to Smith's crying and whining. Smith responded by saying "suck my dick" to which Reese said "fuck you." Smith then said "well, why not? Brian [Henning] would." Henning kind of snickered about it a second and made some comment about smart ass comments not deserving smart ass answers. Henning later complained to management about the incident and alleged that Smith turned on the microphone and said over the radio, "come on, Brian, will you do it" four or five times.

On January 24, 2007, Morton Salt terminated Smith for this conduct, advising Smith that he had violated his Last Chance Agreement agreed upon in October of 2006.[5] Smith testified that once a complaint is made, management has an obligation to investigate. Former Plant Manager Steve Borchardt (the Company's decisionmaker in this case) testified that Smith's comments violated the

---

[5]Plaintiff attempts to controvert this fact by citing to his deposition in which he testified that Defendant terminated on the basis of his disability. However, the fact that Smith was terminated for this conduct in violation of his Last Chance Agreement is also a stipulated fact in the Pretrial Order. *See* Doc. 40, p. 4, ¶ 4(a)(17). As noted above, parties are bound by their pretrial order. To the extent Plaintiff is attempting to controvert Defendant's reason for terminating him, the Court will address whether there is a genuine issue of material fact in its analysis.

Company's Workplace Security Policy. Borchardt interpreted Smith's comments as threatening because Smith repeatedly commented on Henning's performance of a sexual act on Smith, rather than a passing or flippant comment. Borchardt also testified that he believed that Smith's comments violated the Company's Anti-Harassment Policy.[6]  Smith testified that he has no reason to suspect that Borchardt, the plant manager who terminated him, had any issue with Smith because of his Hepatitis C diagnosis or condition.[7]

After Smith's termination in January 2007, the labor union representing him filed a grievance challenging his termination. In November 2007, a labor arbitrator reinstated Smith with full back pay and benefits, finding that Smith's comments were mere "shop talk" and that the termination was without "just cause" under the terms of the collective bargaining agreement.

Smith filed his lawsuit, alleging discrimination under the ADA, on March 4, 2009. Morton Salt now requests summary judgment in its favor.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[8] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[9] A fact

---

[6]Plaintiff attempts to controvert Borchardt's deposition testimony by citing to the Arbitrator's report from his arbitration with Defendant. However, this report does not contradict Borchardt's testimony because it does not address Borchardt's subjective beliefs. In addition, the Court is not bound by an arbitrator's factual or legal determinations. *See, e.g., Ryan v. City of Shawnee*, 13 F.3d 345, 347 (10th Cir. 1993) (arbitration award not given preclusive effect in subsequent discrimination lawsuit). Furthermore, the issue of Plaintiff's Hepatitis C and the effect on his employment was not an issue for the Arbitrator. The issue in arbitration was whether Smith's actions in January 2007 violated his last chance agreement, and if they did, whether there was just cause for discharge.

[7]Plaintiff asserts that he believes Borchardt was aware of the Hepatitis C comments and did nothing about them, but again, he only cites to his own deposition testimony.

[8]Fed. R. Civ. P. 56(c).

[9]*Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

is "material" when "it is essential to the proper disposition of the claim."[10] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[11]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[12] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[13]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[14] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[15] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[16] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[17] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[18]

---

[10]*Id.*

[11]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[12]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[13]*Id.* (citing *Celotex*, 477 U.S. at 325.)

[14]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[15]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[16]*Adler*, 144 F.3d at 671.

[17]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[18]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[19]

### III. Analysis

Plaintiff contends that Defendant discriminated against him under the ADA because Defendant allegedly terminated him due to his disability, Hepatitis C. To establish a prima facie case of discrimination under the ADA, Plaintiff must demonstrate (1) that he is disabled within the meaning of the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job he holds or desires; and (3) the defendant discriminated against him because of his disability."[20] "The ADA defines 'disability . . . with respect to an individual' as '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'"[21]

In this case, Plaintiff does not assert that he is actually disabled or that there is a record of such disability. Instead, he proceeds on the theory that Defendant regarded him as disabled. "To

---

[19] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[20] *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1189 (10th Cir. 2007). The ADA was amended on September 25, 2008, but the amended version specifically became effective on January 1, 2009. ADA Amendment Act of 2008 ("ADAAA"), Pub. L. 110-325, 122 Stat. 3553 (2008). Numerous courts have determined that the amendments do not apply retroactively. *See Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1261, n. 2 (10th Cir. 2009) (finding it unnecessary to consider the effect of the ADA amendments because the allegedly discriminatory conduct occurred prior to the amendments). *See also LaBrue v. Gab Robins N. Am., Inc.*, 2009 WL 2355785, at *4 (D. Kan. July 29, 2009) (collecting numerous cases in which courts have held that "the ADA amendments do not apply to conduct prior to the effective date of the statute."). In this case, Plaintiff's termination occurred in January 2007, well before the ADA amendments were enacted. As such, the ADA amendments are inapplicable.
Although Plaintiff agrees that the amendments do not apply retroactively, Plaintiff nonetheless argues that he is disabled under the Amendments. He argues that the Amendments make clear that his diagnosis of Hepatitis C is alone sufficient to establish an impairment, without regard to whether it substantially limits a major life activity. As noted , the Court will not retroactively apply the ADA amendments.

[21] *Jones*, 502 F.3d at 1189 (citing 42 U.S.C. § 12102(2)).

prevail on a regarded-as claim, a plaintiff must show that an employer has mistaken beliefs about the plaintiff's abilities: the employer 'must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.'"[22] In either situation, "the employer must mistakenly believe that the impairment substantially limits the employee in one or more major life activities."[23]

Plaintiff argues that Defendant treated Plaintiff's disability, Hepatitis C, as a physical impairment that substantially limited him in the major life activity of working. "When the major life activity at issue is that of working, a plaintiff must show that [he] is unable to perform either a class of jobs or a broad range of jobs in various classes."[24] A plaintiff asserting that he is disabled under (C) must demonstrate that his employer regarded him as having a disability substantially limiting his "ability to perform a broad range of jobs, rather than a single position" and that "the employer's misperception was based on myth, fear, or stereotype, including concerns regarding safety, insurance, liability, and acceptance by coworkers and the public."[25]

Plaintiff asserts that there are material questions of fact concerning Defendant's position on him being substantially limited in his ability to perform his job in the boiler department. He argues that Defendant regarded him as disabled because Defendant did not believe that Plaintiff could work in any position because Defendant believed that Plaintiff's Hepatitis C was a lethal threat to other employees. The Court disagrees as Plaintiff's theory is an convoluted one based on underlying erroneous assumptions.

---

[22]*Id.* at 1190 (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)).

[23]*Id.*

[24]*Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1133 (10th Cir. 2003)

[25]*Id.* (internal quotations and citations omitted).

To support his theory, Plaintiff first relies on a brief notation contained in the Arbitrator's decision in which the Arbitrator states that there is a new argument raised in the employer's brief that "since Tim Smith was Hepatitis C, that to in effect threaten someone in this particular could be considered a threat to the other employee's life." There are several issues with relying on this statement.

First, the statement is hearsay because Plaintiff is relying on this statement in an attempt to prove the truth of the matter asserted. The Court must disregard inadmissible hearsay when ruling on summary judgment motions.[26] As such, the statement is not even admissible.

Next, because the employer raised this argument in post-arbitration briefing, it does not appear that Defendant relied on this reasoning when it terminated Plaintiff. Indeed, Borchardt, the person who made the decision to terminate Plaintiff, testified that Plaintiff's Hepatitis C did not factor into his decision to terminate Plaintiff and that he did not believe Plaintiff's mere statement was a threat on the other employee's life. Instead, Borchardt testified that he found the incident threatening because he believed that Plaintiff repeatedly made the statement to Henning. Plaintiff presents no competent evidence to contradict Borchardt's testimony.

The remainder of Plaintiff's theory as to how Defendant regarded him as disabled is all based on his initial erroneous assertion.[27] Plaintiff has simply presented no evidence to create a genuine issue of material fact that Defendant regarded Plaintiff as disabled or believed Plaintiff had a substantially limiting impairment that substantially limited him in the major life activity of

---

[26]*Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

[27]Plaintiff contends that based on Defendant's statement in arbitration, this demonstrates that Defendant believes Plaintiff's behavior is life-threatening and therefore Defendant has no choice other than to remove Plaintiff from his employment. This, in turn, allegedly demonstrates that Defendant believes that Plaintiff is not suited for any position in the plant. Finally, Plaintiff contends that this demonstrates that Defendant regarded Plaintiff as disabled.

working. As such, Plaintiff has not met the first element of a prima facie case of discrimination on the basis of a disability.

Even if Plaintiff could meet the first element of a prima facie case of discrimination under the ADA, he also fails to meet the third element. "[T]o establish the third element of a prima facie case of disability discrimination, the plaintiff must show that [he] was terminated because of [his] disability, or that the employer terminated the plaintiff 'under circumstances which give rise to an inference that the termination was based on [his] disability.'"[28] Plaintiff is required "to present some affirmative evidence that disability was a determining factor in the employer's decision."[29]

The majority of the evidence Plaintiff presents comes from his own unsupported conclusions. Conclusory statements based on mere subjective belief are insufficient to defeat a motion for summary judgment.[30] Plaintiff argues that management knew of Plaintiff's character trait of being a "verbal employee" before his diagnosis of Hepatitis C. He claims that after he was diagnosed, management took the position of automatically viewing his statements as threatening and harassing behavior, instead of counseling him. Plaintiff, therefore, concludes that this indicates Defendant was hypersensitive to his behavior which supports an inference of discrimination.

Plaintiff's theory, however, has no support. After Plaintiff was diagnosed with Hepatitis C, he continued to work for Defendant for three years with no incidents. Indeed, Plaintiff himself states that Defendant allowed him to transfer to a higher paid position within the company after his

---

[28]*Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 748 (10th Cir. 1999) (citing *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

[29]*Morgan*, 108 F.3d at 1323.

[30]*Adler*, 144 F.3d at 675. Plaintiff frequently attempts to controvert facts by relying on his own deposition testimony with no further support in the record.

diagnosis.[31] It was only after Plaintiff was involved in an altercation in 2005 in which he threatened to "stomp [a co-worker's] butt into the ground" that he was disciplined for threatening behavior. Plaintiff admits that this incident had nothing to do with his Hepatitis C diagnosis.

After he was placed on a last chance agreement for this incident, Plaintiff again engaged in behavior that his supervisor found to be threatening.[32] Plaintiff does not controvert that Borchardt found the incident threatening nor does he controvert that Borchardt was the individual who made the decision to terminate him. Here, Plaintiff presents no competent evidence that his Hepatitis C was a determining factor in Defendant's decision to terminate him. As such, Plaintiff fails to make a prima facie case of discrimination under the ADA.

---

[31]It is uncontroverted that the position Plaintiff obtained after returning from his six-month leave involved an increase in pay.

[32]Plaintiff also asserts that an inference of discrimination exists because Defendant treated other employees differently. Suffice to say, Plaintiff does not present competent evidence of differential treatment of similarly situated employees.

**IT IS ACCORDINGLY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 41) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 28th day of February, 2011.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE